## Bard and Wetmore v. Chamberlain and others.

Under a statement in the bill, that by an act of the legislature of another state, a corporation was created with various powers and duties ; the complainant cannot prove that the charter of such corporation, conferred on it the power to loan money on real estate and to take bonds and mortgages.

Corporations, in this country, owe their existence to the legislative power ; they are created for specific and defined objects and purposes ; and they derive all their powers from their charters. To ascertain their capacity, reference must be had to their acts of incorporation. It cannot be inferred, from the mere fact that they are created bodies politic and corporate.

March 8 ; August 28, 1847.

THIS was a bill to foreclose a mortgage executed August 26th, 1835, by S. Chamberlain and his wife to The American Life Insurance and Trust Company, on lands in the city of Buffalo. The mortgage was assigned to the complainants on the 15th of November, 1842.

---

(a) See also *Gibbes* v. *Gibson*, reported *postea ;* and 5 Paige, 268.

The mortgagees were a corporation created by the legislature of the state of Maryland. The mortgage was made payable at the office of the agency of the company in the city of New York.

The bill set forth the charter of the company in the manner stated in the opinion of the court; and at the hearing, the complainants introduced in evidence, the act of incorporation and the subsequent statutes amending and consolidating the same.

The defendants, S. and H. S. Chamberlain, (the latter owning the equity of redemption,) in their answers insisted that it was not shown that the corporation had power to make the contract set forth in the bill. They also alleged that the mortgage and the whole transaction in regard to it, occurred in the state of New York, that the American Life Insurance and Trust Company exercised franchises and assumed to act as a corporation in this state, keeping an office and making loans; and that the mortgage was void, both for this cause, and because the transactions which led to it, were a violation of the laws of this state, known as the restraining laws.

Testimony was taken at large on the defence set up in the answers, and the principal argument at the hearing was on the points thus presented. This branch of the case is omitted; the decision having turned on the objection to the competency of the corporation to contract.

*D. Lord, Jr.,* for the complainants.

*Edward Norton,* for the defendants, S. and H. S. Chamberlain.

THE ASSISTANT VICE-CHANCELLOR.—The bond and mortgage in question were executed to The American Life Insurance and Trust Company, on the 26th of August, 1835.

The bill alleges that the mortgagees, by an act of the General Assembly of the state of Maryland, passed at the December session in 1833, were created a body politic and corporate, and as such, various powers were conferred and duties imposed upon them. These powers, the bill states, were altered and modified by several statutes at subsequent sessions, and in December, 1837, an act was passed consolidating the original and supple-

mental acts, and more clearly defining the powers and duties of the company.

The consolidating act is then set forth at large, and by its provisions, the company was clothed with the power to loan money on real estate, and incidentally to take bonds and mortgages.

The bill does not, however, allege either in terms or by implication, that when the mortgage of Chamberlain was executed, these powers were incident to the company.

This omission is made a point by the defendants, who insist that the bill shows no legal capacity in the corporation to make the contracts set up by the complainants, and therefore no valid or binding contract is established. The objection rests wholly upon the frame of the bill. It is a narrow ground upon which to dispose of the cause, but it is one upon which the parties have a right to insist; and if it be well taken, an examination of the graver questions presented at the hearing, is unnecessary.

The only charge in the bill which can be relied upon as setting up the powers exercised in making this contract, is that the company was *created a body politic and corporate.* This it is contended, covers the whole ground, and any restriction in its dealings and powers, must be shown by those alleging its existence.

Although it be true, that a corporation at common law, would as such, have capacity to lend money and take a bond and mortgage; yet in fact all corporations, in this country, owe their existence to legislative power, and are created for specific and defined objects and purposes. They derive all their powers from their charters. By the use of certain general terms, the ordinary capacity of corporations is usually bestowed in these charters, with such limitations and additions as the legislative wisdom has deemed proper. But the capacity, as well as the existence of each, is derived from the act of the legislature, and to that we must refer to ascertain the extent of such capacity.

Chief Justice Marshall says of one of these corporations: "It may correctly be said to be precisely what the incorporating act has made it, to derive all its powers from that act, and to be capable of exerting its faculties, only in the manner which that act authorizes." (*Head v. The Providence Insurance Company,* 2 Cranch, 167.)

And Chief Justice Taney, in *The Bank of Augusta* v. *Earle*, (13 Peters, 587,) says : "It may be safely assumed that a corporation can make no contracts, and do no acts either within or without the state which creates it, except such as are authorized by its charter ; and those acts must also be done by such officers or agents, and in such manner as the charter authorizes."

In *Runyan* v. *Lessee of Coster*, (14 Peters, 122,) Judge Thompson said, that a corporation can have no legal existence out of the sovereignty which created it. Its residence in one state is no insuperable objection to its power of contracting in another ; but the corporation must show that the law of its creation gave it authority to make such contracts, when it sets up contracts made in a foreign state.

The American Life Insurance and Trust Company, was one of the corporations of the modern school, created for defined objects and with limited purposes. The bill declares that it was created a body politic and corporate, *and as such, various powers and duties* were conferred and imposed upon it. This shows that it was thus defined and limited in 1833; and when the mortgage was executed, so far as the bill discloses, it was a body created by a statute which made it a *body corporate with various powers and duties.*

I cannot under the decisions, undertake to say what those powers and duties were, or to assume that it had capacity to take a bond and mortgage for money lent, or for any other consideration. The bill goes far enough to show that the charter expressed the powers which it conferred, but falls short of informing the court what those powers were.

The objection to the bill appears to be well taken.

It is an objection of form only, which might have been raised by a demurrer, and I feel warranted in retaining the suit, and allowing an amendment of the bill upon terms.